**Debra Coleman WARNER, et al.**

v.

**ST. BERNARD PARISH SCHOOL BOARD, et al.**

No. 96–1839.

United States District Court, E.D. Louisiana.

March 31, 2000.

---

5. The court need not address the timeliness of removal.

James Robert Hashek, New Orleans, LA, for plaintiff.

Judy Lynn Burnthorn, Deutsch, Kerrigan & Stiles, New Orleans, LA, for defendant.

## ORDER AND REASONS

MENTZ, District Judge.

Defendants, St. Bernard Parish School Board, Sam Boyd, Dr. Daniel Daste, and

Wayne Warner,[1] seek summary judgment against plaintiffs, Debra Warner (Warner) and Scott Warner,[2] based on the decision of the United States Fifth Circuit Court of Appeals in *Colson v. Grohman*, 174 F.3d 498 (5th Cir.1999).

Debra Warner, the mother of Scott Warner, a St. Bernard Parish public school student during the events at issue, wrote a letter to her son's teacher, Sharon Zeller, in 1992. In the letter, she stated her opinion about certain politically sensitive issues as the basis for her request that her son be excluded from school activities that would expose him to teachings contrary to her own opinions. Three years later, when Debra Warner was a candidate for St. Bernard Parish Council, Zeller released the letter for publication to a local newspaper. The newspaper published an article about Debra Warner, which included excerpts from the letter.

Debra Warner brought this suit on her behalf and on behalf of her son Scott. Warner claims she lost the election and her job as a result of the publication of the letter. She also claims that she had to remove her son from the public school system as a result of the publication of the letter. They claim that the defendants' disclosure of the letter—a student education record[3]—violated Debra Warner's right to free speech under the First Amendment, both plaintiffs' right to procedural due process under the Fourteenth Amendment, their right to privacy under the Fourteenth Amendment, and their rights under the Family and Educational

Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232, et seq. all in violation of 42 U.S.C. § 1983. They also claim violations under corresponding provisions of the Louisiana State Constitution and Louisiana tort law as set forth in Louisiana Civil Code article 2315.

## I.

The First Amendment right to free speech includes not only the affirmative right to speak, but also the right to be free from retaliation for the exercise of that right. *See e.g., Pickering v. Board of Educ.*, 391 U.S. 563, 574, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). Not every action in response to an individual's exercise of his right to free speech is an actionable First Amendment harm. *See Colson,* 174 F.3d at 510.

In *Colson,* the Fifth Circuit considered whether a campaign of retaliatory public criticism and harassment directed toward a candidate for public office by public officials who disagreed with her political views amounted to an actionable First Amendment harm. The court held that the plaintiff's First Amendment rights were not adversely affected because she had "alleged only that she was the victim of criticism, an investigation (or an attempt to start one), and false accusations: all harms that, while they may chill speech, are not actionable under our First Amendment retaliation jurisprudence." *Id.* at 512.

1. Defendants Dr. Daniel Daste and Wayne Warner have already been dismissed from this case on summary judgment. Wayne Warner is unrelated to the plaintiffs, Debra and Scott Warner.

2. This court, in ruling on the defendants' post-trial motions for judgment as a matter of law, new trial, or remittitur, upheld the jury's verdict insofar as the liability of the defendants to Scott Warner under federal and state law. *See* Order entered January 27, 1999, Rec. Doc. No. 202. The court ordered a new trial as to the defendants' liability to Debra Warner under federal and state law, and both

plaintiffs' damages. *Id.* Therefore, the court finds that the present motion for summary judgment, insofar as it is brought against Scott Warner's substantive claims, is not properly before the court. Accordingly, the court will address herein the claims of Debra Warner only.

3. It is an uncontested fact, based on the jury's verdict in the first trial, that the letter was an educational record protected by FERPA. *See* Pre–Trial Order, Uncontested Material Fact No. 9(a), entered July 7, 1999, Rec. Doc. No. 211.

4444 

■ Debra Warner claims that the release of her letter to the newspaper caused adverse publicity, resulting in her loss of the election and her son having to change schools. The defendants' actions, like those at issue in *Colson*, amount to no more than publication of information which subjected the Warners to criticism, reproach, and scorn. According to the court in *Colson*, such conduct is not the sort of adverse action that amounts to an actionable First Amendment harm. *See also Mattox v. City of Forest Park*, 183 F.3d 515, 522 (6th Cir.1999) (adverse publicity which caused a public official to lose her election is not the type of adverse action against which the First Amendment protects). Therefore, Debra Warner's claim for relief under § 1983 based on violation of her rights under the First Amendment must be dismissed.

Legal analysis of retaliation cases under the First Amendment is distinct. The required element of a concrete adverse action is not a universal element for all constitutional or statutory violations actionable under § 1983. Therefore, contrary to the defendants' argument, the court finds that *Colson* should not be applied broadly to all claims of constitutional violations under § 1983.

## II.

Notwithstanding the untimeliness of the present motion for summary judgment, the court agreed to consider it based on the defendants' representation that the untimeliness was unavoidable due to the recent *Colson* decision. The defendants' motion urges dismissal of all constitutional claims under § 1983 based on *Colson*, but also argues dismissal of all federal and state law claims based on law in effect since the inception of this case. While the timing of the *Colson* decision does not justify consideration of the non-*Colson* arguments, the court will nevertheless address those arguments in an attempt to refine the issues for trial.

## III.

Debra Warner claims that the release of the letter violated her right of privacy found in the Fourteenth Amendment's concept of personal liberty. *See Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). Two aspects of the right to privacy are the individual's right to make certain kinds of important personal decisions and the individual's right to avoid disclosure of personal matters. *Id.* Both rights are implicated in this case.

■ "In the context of government disclosure of personal matters, an individual's right to privacy is violated if: (1) the person had a legitimate expectation of privacy; and (2) that privacy interest outweighs the public need for disclosure." *Cantu v. Rocha*, 77 F.3d 795, 806 (5th Cir.1996) (citing *Fadjo v. Coon*, 633 F.2d 1172, 1175–76 (5th Cir.1981)).

■ "Under the autonomy branch of privacy, constitutional protection has been limited to intimate personal relationships or activities, and freedoms to make fundamental choices involving oneself, one's family, and one's relationship with others." *Klein Independent Sch. Dist. v. Mattox*, 830 F.2d 576, 580 (5th Cir.1987) (citing *Paul v. Davis*, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405 (1976)), *cert. denied*, 485 U.S. 1008, 108 S.Ct. 1473, 99 L.Ed.2d 702 (1988). Included among these fundamental liberties is the right to direct the education and upbringing of one's children. *See Meyer v. Nebraska*, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). State action involving a parent's liberty interest, that does not also implicate religious freedom, is not tested under a heightened scrutiny standard, but the less stringent standard of whether the state action is rationally related to a legitimate state purpose. *See e.g., Wisconsin v. Yoder*, 406 U.S. 205, 232, 92 S.Ct. 1526, 1542, 32 L.Ed.2d 15 (1972); *Jensen v. Reeves*, 45 F.Supp.2d 1265 (D.Utah 1999).

Here, Debra Warner had a legitimate expectation of privacy in her private communications to her son's teacher about his education. Defendants argue that Debra Warner cannot have a privacy interest in the letter because the matters contained therein were not only of public concern, but were already known to the public, and as a candidate for public office, she should have expected her political views to be subject to critical public inspection. What the defendants fail to recognize is that the letter was not just a statement of Debra Warner's political views, but a personal and private communication directed solely to her son's teacher to address the scope of his education. In addition to the private nature of the letter, it is an uncontested fact in this case, based on the jury's verdict in the first trial, that the letter was an educational record protected by FERPA. Pursuant to FERPA, a parent has an expectation of privacy in her child's educational records because the statute provides that such records will not be released without written parental consent. *See Achman v. Chisago Lakes Indep. Sch. Dist.,* 45 F.Supp.2d 664, 673 (D.Minn.1999) (finding that FERPA is intended to benefit student and parent privacy interests).

Although Debra Warner publicly discussed her political views on prior occasions, there is no evidence that her son's education was ever the subject of public discussion or ever could be a topic of legitimate public concern. *See Bloch v. Ribar,* 156 F.3d 673, 686 (6th Cir.1998) (where crime victim and husband spoke to the media about her rape without mentioning any personal or intimate details did not waive their right of privacy in such details which the sheriff subsequently released to the media.) The fact that part of the subject of the letter involved matters of general political and social concern, about which Debra Warner may have publicly spoken on prior occasions, does not make the letter, which tied her political views to what she desired for her son's education, a matter of public concern. The court concludes that in this case, Debra Warner's interest in avoiding public disclosure of her letter outweighs any possible political or societal interest in public dissemination.

This case presents no circumstances, such as concern for the health or safety of a child, which would serve as a legitimate purpose for public disclosure. There is no evidence that the disclosure served any legitimate educational or law enforcement concerns. The defendants' sole justification for the disclosure was the public's need to know Debra Warner's political views. The public's need to know in this case is an insufficient basis to infringe upon a parent's right to direct the education of her child. Certainly, this sort of disclosure could discourage parents from communicating with teachers or other professionals about their children's education. In the court's opinion, public disclosure of the letter was not rationally related to a legitimate state purpose. Therefore, summary judgment on Debra Warner's claim under § 1983 for violation of her Fourteenth Amendment right to privacy under either the confidentiality or autonomy aspects of the right to privacy is not warranted.

For the same reasons, Debra Warner's claim that she was denied the right to privacy provided by the Louisiana Constitution should not be dismissed.

### IV.

Debra Warner's procedural due process claim under the Fourteenth Amendment is based on the fact that her son's teacher released the letter without providing her the notice required under FERPA. In order to state an actionable claim for violation of procedural due process, Warner must establish that she had a protected liberty or property interest. *See Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 2705, 33 L.Ed.2d 548 (1972). FERPA provides parents protected property and liberty interests in their children's educational records. Under FERPA, a parent is entitled

to notice and the right to decide whether to give written consent to the release of the child's educational records. There is no evidence in this case that the defendants adhered to even the most minimum procedures required by due process in releasing Warner's letter to the media.

The decision in *Colson* to dismiss the Fourteenth Amendment due process claim based on the dismissal of the First Amendment claim does not apply in this case. In *Colson*, the plaintiff's due process claim, like her First Amendment claim, was based solely on the alleged harm to the plaintiff's reputation; whereas in Warner's case, her due process claim is based on denial of a right to procedural due process created and defined by FERPA. Accordingly, this court finds that Warner is entitled to claim the procedural protections of due process.

Debra Warner's claims under Louisiana tort law are not ripe for dismissal because she has established that the defendants owed her a duty to not violate her rights under the constitution and the statutory provisions of FERPA. Based on the foregoing analysis with respect to Warner's constitutional claims, the court rejects the defendants' argument that her tort claim fails because she had no privacy interest or because the release of the letter was reasonable.

Accordingly,

IT IS ORDERED that the Motion of Defendants St. Bernard Parish School Board, Sam Boyd, Dr. Daniel Daste, and Wayne Warner for Summary Judgment is **GRANTED IN PART** dismissing Debra Warner's claim under 42 U.S.C. § 1983 for violation of her First Amendment rights, and **DENIED IN PART** in all other respects.